UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| THERESA R., ) | |
| ) | |
| Plaintiff ) | |
| ) | |
| v. ) | No. 2:22-cv-00145-LEW |
| ) | |
| KILOLO KIJAKAZI, ) | |
| Acting Commissioner of ) | |
| Social Security, ) | |
| ) | |
| Defendant ) | |

**REPORT AND RECOMMENDED DECISION**

The Plaintiff in this Social Security Disability (SSD) appeal contends that the Administrative Law Judge (ALJ) erred in concluding that she did not meet the criteria for waiver of an overpayment in SSD benefits. *See* Statement of Errors (ECF No. 14) at 7-18. I find no error and, accordingly, recommend that the Court affirm the Commissioner's decision.

**I. Background**

The Plaintiff began receiving SSD benefits pursuant to Title II of the Social Security Act in 1999. *See* Record at 12. More than a decade later, she began to attempt to work again. *See id*. at 14. In 2016, the Social Security Administration (SSA) informed her that she had been overpaid SSD benefits. *See id*. at 12. She requested a waiver of the overpayment on the basis that she was not at fault in causing it. *See id*. A field office denied the requested waiver. *See id*. The Plaintiff filed a request for hearing before an ALJ, which was held in August 2019. *See id*.

1

The ALJ then issued the decision at issue, finding that (1) the Plaintiff was overpaid SSD benefits in the amount of $15,718.80 during the period from March 1, 2015, to October 1, 2016, *see id*. at 14, (2) the Plaintiff was at fault for causing the overpayment, *see id*. at 14-15, (3) alternatively, even if the Plaintiff had not been at fault, recovery of the overpayment did not defeat the purpose of Title II, *see id*. at 15, and (4) the Plaintiff accordingly was liable for repayment of $15,718.80, *see id*. The Appeals Council denied the Plaintiff's request to review the ALJ's decision, *see id*. at 1-3, making that decision the final determination of the Commissioner, *see* 20 C.F.R. § 404.981.

## II. Standard of Review

A final decision of the Commissioner is subject to judicial review to determine whether it is based on the correct legal standards and supported by substantial evidence. *See* 42 U.S.C. § 405(g); *Seavey v. Barnhart*, 276 F.3d 1, 9 (1st Cir. 2001). Substantial evidence in this context means evidence in the administrative record that a reasonable mind could accept as adequate to support an ALJ's findings. *See Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). If an ALJ's findings are supported by substantial evidence, they are conclusive even if the record could arguably support a different result. *See Irlanda Ortiz v. Sec'y of Health & Hum. Servs.*, 955 F.2d 765, 769 (1st Cir. 1991). But an ALJ's findings "are not conclusive when derived by ignoring evidence, misapplying the law, or judging matters entrusted to experts." *Nguyen v. Chater*, 172 F.3d 31, 35 (1st Cir. 1999).

## III. Discussion

The sole issue presented by this appeal is whether the ALJ's finding that the Plaintiff did not qualify for a waiver of overpayment is supported by substantial evidence. I conclude that it is.

An SSD beneficiary qualifies for a waiver of an overpayment if she satisfies two criteria: that (1) she was "without fault" for the overpayment and (2) its recovery would either "defeat the purpose" of SSD benefits or "be against equity and good conscience." 42 U.S.C. § 404(b)(1). An SSD beneficiary is without fault when, as relevant here, she accepts an overpayment "because of reliance on erroneous information from an official source within the Social Security Administration [(SSA)] . . . with respect to the interpretation of a pertinent provision" of the law. 20 C.F.R. § 404.510a. By contrast, an SSD beneficiary is at fault when, as relevant here, she accepted a payment that she "either knew or could have been expected to know was incorrect." *Id*. § 404.507(c). The Plaintiff acknowledges that a beneficiary bears the burden of proving that she is without fault. *See* Statement of Errors at 9.

The Plaintiff argued before the ALJ that she was "not at fault because she was given incorrect information during a phone contact with the [SSA] sometime in September of 2012," specifically, "earnings limit information pertaining to Title II retirement benefits as opposed to Title II disability benefits." Record at 14. She asserted that she was told that "as long as she earn[ed] less than $12,000 for the year, she would not be overpaid." *Id*. (citations omitted). By contrast, pursuant to the applicable standard, an SSD beneficiary is provided a "trial work period" of nine

3

months, not necessarily consecutive, "during which [she] may test [her] ability to work and still be considered disabled." 20 C.F.R. § 404.1592(a). If she has engaged in "substantial gainful activity" (SGA), and "any applicable trial work period has been completed," her disability is deemed to have ended. *Id.* § 404.1594(f)(1).[1]

The ALJ rejected the contention that the Plaintiff was without fault for her overpayment, explaining that it was not "reasonable for [her] to have solely relied on telephonic advice in view of the written materials that had been sent" to her. Record at 14. Those materials included (1) a July 1, 2013, notice informing the Plaintiff that she had completed six of the nine months of her trial work period, explaining the trial work period rules with monthly earnings limits, and directing her "to promptly report all wages or changes in work activity" to the SSA, as well as (2) "notices of ineligibility in October and November of 2015." *Id.* at 14-15 (cleaned up).

The ALJ observed that, although the Plaintiff testified at hearing that she did not understand the July 2013 notice "and thought it probably applied to someone else," she also testified that she had made no attempt to contact anyone for help understanding it. *Id.* at 15. The ALJ concluded that, as of that time, the Plaintiff was "on notice regarding the trial work period rules" and "knew, or should have known, [that] the amounts she was receiving were calculated on a monthly basis and that she should have been reporting her earnings." *Id.* Yet, the ALJ noted, even after

---

[1] A claimant's average monthly earnings constitute SGA if they exceed an amount established by the SSA for each calendar year. *See* 20 C.F.R. § 404.1574(b)(2), (b)(3)(i). For nonblind individuals, that amount was $1,090 per month in 2015 and $1,130 per month in 2016. *See* SSA Program Operations Manual System (POMS) § DI 10501.015(B).

4

the Plaintiff "received notices of ineligibility in October and November of 2015, she persisted in unreported SGA-level earnings in 2016." *Id.* (cleaned up). She found that the Plaintiff "had a responsibility to review and understand the notices the agency was sending her" and had not established any basis on which she might not have been able to do so. *Id.*

The Plaintiff challenges the ALJ's finding of fault on the ground that the SSA notices were "extremely confusing," arguing that (1) nothing on the first page of the July 2013 notice, which reassured her that her eligibility for benefits was continuing, prevented a reasonable conclusion that no immediate action was needed to report work income, and, (2) while the October and November 2015 notices informed her for the first time that she might not be eligible for disability payments for certain months in 2015, they stated that the SSA had not yet decided if she could still receive such payments and did not inform her that she had been overpaid. *See* Statement of Errors at 13-15.

She adds that the ALJ "insufficiently considered [her] age, education, background, [and] inexperience in dealing with the [SSA]" and "failed to consider the fact that [she] had no legal representation regarding her SSDI benefits until January 2017." *Id.* at 17. She analogizes this case to *Hughes v. Barnhart,* No. Civ.A.03-174-A-1, 2004 WL 3247622 (M.D. La. May 27, 2004), and *Rini v. Harris*, 615 F.2d 625 (5th Cir. 1980), in which courts reversed denials of requests for waivers of overpayments. *See id.* at 16-17.

Her argument fails to carry the day. A beneficiary is "at fault" if she "caused or helped cause the overpayment" and "without fault" if she was "blameless in the creation of the overpayment." POMS § GN 02250.005(A). A beneficiary "is expected to exercise a high degree of care in preventing an overpayment." *Id.* § GN 02250.005(B)(2). The ALJ supportably determined that the five-page July 2013 notice alone sufficed to put the Plaintiff on notice—well before she incurred overpayments—that any reliance on the incorrect information provided during her phone call with the agency in 2012 was misplaced.

The first page of that notice stated that the Plaintiff had "worked in at least 6 month(s) of the 9-month trial work period," citing each of the six months in which the SSA found that she had done so. Record at 187. The second page warned that she (1) had a duty to promptly report any changes that might affect her benefits, including a return to work since her last report or a future return to work, "no matter how little you earn," (2) "[f]ailure to do so could mean" that she might "have to repay any benefits not due," and (3) she had a right to appeal if she thought the SSA was wrong. *Id.* at 188. The remaining pages explained the concept of a trial work period, noting that once that period ended, SSD benefits would continue if the Plaintiff remained disabled and her average earnings did not exceed certain monthly amounts, which were set forth for the years 2001 through 2013. *See id.* at 189-91. The ALJ supportably determined that the July 2013 notice apprised the Plaintiff of "the trial work period rules" and that she "knew, or should have known," that "the amounts

she was receiving were calculated on a monthly basis and that she should have been reporting her earnings." *Id*. at 15.

The ALJ further supportably found that the Plaintiff had not shown that she lacked the capacity to seek clarification of the meaning of the SSA's notices. The Plaintiff's assertion that the ALJ ignored relevant factors falls flat. In determining whether an individual is at fault for an overpayment, an ALJ must take into account "all pertinent circumstances, including the individual's age and intelligence, and any physical, mental, educational, or linguistic limitations (including any lack of facility with the English language) the individual has." 20 C.F.R. § 404.507. The ALJ did so, finding "no basis, such as a mental impairment, that would have interfered with the [Plaintiff's] ability to investigate any notice she did not understand." Record at 15. The Plaintiff identifies no such evidence of record that the ALJ overlooked. *See* Statement of Errors at 17.

The Plaintiff's citations to *Hughes* and *Rini* do not bolster her case. *Hughes* is distinguishable in that, in deeming an SSD beneficiary at fault for overpayments, the ALJ in that case ignored uncontradicted evidence that the beneficiary was hospitalized for at least seven weeks following a stroke, continued to have problems with dizziness and the use of his right eye, could not read or write, and relied on relatives to complete disability paperwork. *See Hughes*, 2004 WL 3247622, at *3. *Rini* is distinguishable in that, unlike the Plaintiff, the SSD beneficiary in that case promptly notified the SSA that he had returned to work but received no further word

7

from the SSA until it advised him that he had incurred an overpayment two years earlier. *See Rini*, 615 F.2d at 626-27.[2]

## IV. Conclusion

For the foregoing reasons, I recommend that the Commissioner's decision be **AFFIRMED**.

### *NOTICE*

*A party may file objections to those specified portions of a Magistrate Judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which <u>de novo</u> review by the District Court is sought, together with a supporting memorandum, within fourteen (14) days after being served with a copy thereof. A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to <u>de novo</u> review by the District Court and to appeal the District Court's order.*

Dated: January 11, 2023

/s/ Karen Frink Wolf
United States Magistrate Judge

---

[2] Moreover, as the United States District Court for the District of Massachusetts has observed, *see Beaudry v. Sec'y of HHS*, No. 90-30093-F, 1991 WL 319161, at *6 (D. Mass. Sept. 24, 1991), *Rini* employed a balancing test seemingly in tension with the analytical pathway set forth in the controlling statute and regulations in holding that, while "[t]here may have been a scintilla of evidence indicating some fault on Rini's part," the "fault in this case belongs at the agency's doorstep," as a result of which the agency's "claim that Rini acted unreasonably in not knowing that he was being overpaid offends both equity and good conscience," *Rini*, 615 F.2d at 627.